UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JACK RUNSER, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:21-cv-00160 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| CITY OF DAYTON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANT CHRISTOPHER MALSON'S MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 32) AND MOTION TO DISMISS BY DEFENDANT JONATHAN SOPCZAK (DOC. NO. 36)**

---

This action is brought by Plaintiff Jack Runser ("Runser") alleging various claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, 42 U.S.C. § 1983, and various common law tort claims.  In his Amended Complaint (the "Amended Complaint"), Runser alleges that he was wrongfully detained by two Dayton Police officers, who failed to accommodate his physical disabilities.  (Doc. No. 31.)  Runser further alleges that the Police Department failed to accommodate his disabilities during the investigation of the incident and ratified the officers conduct through their investigation.  (*Id*.)  Defendant Christopher Malson ("Malson") and Jonathan Sopczak ("Sopczak") filed separate motions to dismiss (the "Motions") (Doc. No. 32; Doc. No. 36), arguing that the Amended Complaint fails to state a claim against either Malson or Sopczak.  (Doc. No. 32; Doc. No. 36.)  For the reasons discussed below, the Court **GRANTS** both Motions.

I. <u>BACKGROUND</u>

The Complaint alleges that Runser, who suffers from cerebral palsy and is non-verbal, left

1

his home to go to Dollar General. (Doc. No. 31 at PageID 301.) Runser typically uses the median to avoid walking on the road due to his disabilities. (*Id*.) The Dayton Police received a call from a driver requesting a welfare check on an individual walking down the median. (*Id*.) Defendant Officer Joshua Wiesman ("Wiesman") and Officer Seth Victor ("Victor") responded to the area and followed Runser into the Dollar General parking lot. (*Id*. at PageID 301-02.)

Runser is unable to hear or speak and can only communicate through lip reading, sign language, or writing. (*Id*.) As a result, he was unaware of the actions Officers Wiesman and Victor were taking upon pulling into the Dollar General parking lot. (*Id*.) Victor grabbed Runser and, at this point, Runser became aware the officers were trying to communicate with him. (*Id*.) Runser indicated to the officers that he could not hear and motioned for a pen and paper so he could communicate with the officers. (*Id*.) However, Runser was unable to write on the paper Victor provided to him due to the tremors in his hands and the lack of a hard surface to write on. (*Id*. at PageID 303.)

Wiesman removed his mask and asked Runser for identification, which he did not have. (*Id*.) At this point, the officers grabbed Runser and handcuffed him behind his back. (*Id*.) The officers transported Runser to a local hospital, despite Runser's indication that he did not want to leave the vicinity of the Dollar General. (*Id*. at PageID 303-04.) Runser was taken into the hospital and turned over to the hospital staff. (*Id*. at PageID 304.) The officers subsequently left Runser at the hospital. (*Id*.)

Runser filed a complaint with the Dayton Police Department regarding his treatment by officers Wiesman and Victor. (*Id*.) Sergeant Jonathan Sopczak ("Sopczak") was assigned to investigate the incident. (*Id*.) Sopczak failed to utilize an interpreter during his investigation, so that he could communicate with Runser. (*Id*.) Major Christopher Malson ("Malson") was

responsible for reviewing the results of the investigation.  (*Id*.)  A notice was sent to Runser by Malson indicating that there was insufficient evidence to support his complaint.  (*Id*. at PageID 306.)

This lawsuit was initially filed in the Common Pleas Court of Montgomery County on May 29, 2021.  (Doc. No. 5.)  Defendants removed the case to this Court on June 10, 2021 pursuant to this Court's jurisdiction over the federal law claims under 28 U.S.C. §§ 1331 and 1343 and its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  (Doc. No. 1.)  Runser filed his Amended Complaint on January 4, 2022.  (Doc. No. 31.)  Malson filed his Motion on January 7, 2022 (Doc. No. 32) and Runser filed his response on January 28, 2022 (Doc. No. 38).  Malson filed his reply on February 3, 2022.  (Doc. No. 39.)  Sopczak filed his Motion on January 17, 2022 (Doc. No. 36) and Runser filed his response on February 7, 2022 (Doc. No. 40.)  Sopczak filed his reply on February 21, 2022.  (Doc. No. 42.)  Both motions are fully briefed and ripe for review.[1]

## II.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this rule "does not require 'detailed factual allegations' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.

---

[1] The Court must address an issue of concern with counsel for Runser and Malson.  Both counsel included quotations that were either unattributed to a specific case or the quotation did not appear in the case cited.  For instance, Malson included the quote "allegations that a defendant mishandled a grievance or failed to investigate a complaint are insufficient to state a claim," with a citation to *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  (Doc. No. 32 at PageID 323.)  This quote does not appear in that case.  Runser similarly includes a quote with the citation, "See *Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999)." (Doc. No. 38 at PageID 364.)  A "See" is not an appropriate cite for a quote.  Moreover, Runser fails to include a page citation.  Additionally, Runser states, "[h]owever, individual liability can be established against Defendant Malson and others under Section 504 of the Rehabilitation Act of 1973 when prospective declaratory and injunctive relief is sought. *Ex parte Young*, 209 U.S. 123, 28. S. Ct. 441, 52 L.Ed. 714 (1908)." (*Id*.)  The Court need not explain why a case decided in 1908 could not have possibly commented on a law passed in 1973.  These citation errors are unnecessary and both counsel would be well served by more diligently reviewing the accuracy of their citations moving forward.

Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6) (providing for motions to assert a "failure to state a claim upon which relief can be granted"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

4

### III. ANALYSIS

Malson and Sopczak both argue that Runser's ADA and Rehabilitation Act claims should be dismissed because there is no individual liability under the ADA or the Rehabilitation Act. (Doc. No. 32 at PageID 320-21; Doc. No. 36 at PageID 348-49.) They further argue that the Amended Complaint fails state a claim under Section 1983 because it does not allege that either Defendant encouraged or acquiesced to the alleged unconstitutional conduct. (Doc. No. 32 at PageID 321-25; Doc. No. 36 at PageID 349-50.) Finally, both Malson and Sopczak argue that the remaining claims must be dismissed because they either do not direct any allegations toward the Defendants or they state claims for municipal liability. (Doc. No. 32 at PageID 325-26; Doc. No. 36 at PageID 350-52.)

In response, Runser argues that, under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), an individual official may be held liable if the plaintiff seeks prospective relief. (Doc. No. 38 at PageID 364-65; Doc. No. 40 at PageID 379-80.) Runser further argues that the Amended Complaint sufficiently pleads claims against Malson and Sopczak under Section 1983 because individual supervisors may be liable if they "failed to properly train and supervise officers, failed to properly investigate allegations of excessive force, and attempted to cover-up constitutional wrongdoing" because they "are sufficient to show implicit authorization, approval, or knowingly acquiescing in the unconstitutional conduct of the subordinates." (Doc. No. 38 at PageID 363; Doc. No. 40 at PageID 378.) Runser does not address the remainder of Malson and Sopczak's arguments.

#### A. ADA and Rehabiliation Act Claims

Title II of the ADA prohibits a public entity from discriminating against disabled individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

5

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under Title II, the proper defendant is the public entity. *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) (citing *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000)). The Sixth Circuit and courts in this district have repeatedly held that the ADA does not permit public officials to be sued in their individual capacities. *Williams*, 247 F. App'x at 8; *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Quinn v. Ohio State Highway Patrol*, No. 2:07-cv-187, 2007 U.S. Dist. LEXIS 82289 at *11, 2007 WL 3308014 (S.D. Ohio Nov. 6, 2007); *Sorah v. Tipp City Exempted Vill. Sch. Dist. Bd. Of Educ.*, 2020 U.S. Dist. LEXIS 45343, at *11 (S.D. Ohio Mar. 16, 2020). Similarly, there is no individual liability under the Rehabilitation Act. *Hiler v. Brown*, 177 F.3d 542, 546-47 (6th Cir. 1999); *Hamilton v. Carson-Newman Coll.*, No. 3:09-CV-479, 2010 U.S. Dist. LEXIS 100388, at *13, 2010 WL 3806503 (E.D. Tenn. Sep. 23, 2010).

Defendants Malson and Sopczak first argue that Runser's ADA claims against them in their individual capacities are prohibited because there is no individual liability under the ADA. (Doc. No. 32 at PageID 320-21; Doc. No. 36 at PageID 348.) Runser argues that individual liability may be established again Malson and Sopczak via the precedent set in *Ex Parte Young*. (Doc. No. 38 at PageID 364; Doc. No. 40 at PageID 379.) In reply, Malson argues that Runser's claim is also barred against Malson because Runser only seeks retrospective relief from Malson. (Doc. No. 39 at PageID 368-69.)

Runser's argument that individual liability remains under *Ex Parte Young* is incorrect. In *Ex Parte Young*, the Supreme Court announced an exception to Eleventh Amendment sovereign immunity. *See Ex Parte Young*, 209 U.S. 123. However, one of the keys to falling within the *Ex Parte Young* exception is, "a claim must seek prospective injunctive relief against an individual state official in their *official capacity* and that claim must seek to end a continuing violation of

federal law." *Lawrence v. Maryland*, No. No. 3:18-cv-304, 2019 U.S. Dist. LEXIS 164947, at *18, 2019 WL 4723073 (E.D. Tenn. Sep. 26, 2019) (citing *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)) (emphasis added); *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002).

In this case, Malson[2] and Sopczak ask for relief in their individual capacities. As a result, the precedent in *Ex Parte Young* is inapplicable to their arguments. Therefore, Counts I and II are dismissed to the extent they direct claims against Malson and Sopczak in their individual capacities.

### B. 42 U.S.C. § 1983 Claim

Section 1983 establishes "'a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 940-41 (6th Cir. 2010) (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 656 (6th Cir. 2002)). To prevail on a cause of action under Section 1983, a plaintiff must prove "'(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones*, 625 F.3d at 941)). Moreover, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937 (2009).

At the outset, it is well-settled that a government official may not be held liable under Section 1983 based on a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Peatross v. City of Memphis*, 818 F.3d 233, 243 (6th Cir. 2016).

---

[2] In Malson's reply, he addresses the official capacity analysis in *Ex Parte Young* for the purpose of pointing out the requirement that the plaintiff seek prospective relief. (Doc. No. 39 at PageID 368-69.) It is not clear whether this is to address Runser's argument or to seek a dismissal of the official capacity claims. Therefore, the Court will not consider the arguments in the reply as an attempt to dismiss the official capacity claims.

A supervisory official's failure to supervise control, or train an individual is not actionable unless the supervisor "'encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)); *See also Peatross*, 818 F.3d at 243; *Griffith v. Franklin Cty.*, 975 F.3d 554, 579 (6th Cir. 2020). Moreover, in investigation related claims of liability, "[b]ecause the injury will have already occurred by the time of the specific investigation, 'there can be no causation' from that single failure to investigate." *Pineda v. Hamilton Cty.*, 977 F.3d 483, 495 (6th Cir. 2020) (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)); *Kirk v. Calhoun Cty.*, Nos. 19-2456, 20-1365, 2021 U.S. App. LEXIS 20835, at *19 (6th Cir. Jul. 12, 2021) (without evidence of a pattern of inadequate investigations of similar incidents "there is no demonstration of causation to show that the allegedly inadequate investigation caused the constitutional violation in question").

Runser relies on *Peatross*, for the proposition that "an individually named supervisor failed to properly train and supervise officers, failed to properly investigate allegations of excessive force, and attempted to cover-up constitutional wrongdoing are sufficient to show implicit authorization, approval, or knowingly acquiescing in the unconstitutional conduct of the subordinates." (Doc. No. 38 at PageID 363.) However, a closer reading of *Peatross* demonstrates why Runser's claims against Malson and Sopczak must fail.

In *Peatross*, Anjustine Vanterpool ("Vanterpool") was killed when two officers fired several rounds into his vehicle at a gas station. *Peatross*, 818 F.3d at 237. The officers had not observed Vanterpool commit any illegal acts, but one of the officers was on the phone with a

8

fellow officer who informed him that Vanterpool's car was identical to one he had seen the day before with expired tags that did not belong to that vehicle. *Id*. The officer tried to stop Vanterpool from leaving the gas station and, in the process, fired multiple shots into his car, killing him. *Id*. at 237-38. The estate brought claims against the officers involved in the shooting, as well as, the director of the police department, alleging he failed to train, supervise, monitor, and discipline the officers of the department. *Id*. at 238.

In its holding, the Sixth Circuit pointed to the director's acknowledgment that the police force needed to improve its disciplinary process and the local mayor's public admonishment of the director for the behavior of the department, as demonstrating acquiescence to the officers' conduct. *Id*. at 243. The court also pointed to the director's frequent "rubber stamping" of the behavior of officers who shot and killed individuals, holding that it "'could be reasonably expected to give rise to just the sort of injuries that occurred' – Vanterpool's unfortunate death." *Id*. at 244 (quoting *Campbell v. City of Sprinboro*, 700 F.3d 779, 790 (6th Cir. 2012)).

Runser does not allege facts sufficient to demonstrate that Malson and Sopczak encouraged or acquiesced to this incident of alleged misconduct. Instead, Runser alleges that Malson and Sopczak conducted an investigation, but failed to use an interpreter and falsified information in the report in order to exonerate the two officers. (Doc. No. 31 at PageID 305.) Runser does not allege that Malson or Sopczak had previously engaged in similar conduct in their investigations or that it was a pattern or practice for them to "rubber stamp" officer's behavior. Instead, Runser states that the Defendants' actions constitute a "pattern and practice of civil rights abuses by Defendants City of Dayton, against persons who live within or travel through the Defendant City of Dayton's territorial jurisdiction, and results from these Defendants establishment of a policy, practice or custom that encourages or acquiesces to civil rights violations. . . ." (Doc. No. 31 at

9

PageID 309.) Runser does not allege that Malson or Sopczak specifically conducted previous flawed investigations or undertook actions that actively encouraged the officer's actions. Instead, the Amended Complaint lodges those allegations against the City of Dayton in the Amended Complaint. Runser has failed to state a claim against Malson or Sopczak under Section 1983. Therefore, Count III is dismissed to the extent it directs a claim at Malson and Sopczak.

### C. 42 U.S.C. § 1983 Conspiracy Claim

Malson further argues that Runser's Section 1983 claim, to the extent it is directed toward Malson, is not saved by the allegation of "conspiracy" contained in a single paragraph of Count III. (Doc. No. 32 at PageID 324.) Runser's Amended Complaint states:

> That the Defendants carried out and perpetrated the mutually supportive conspiracy to deprive Plaintiff of his rights against unreasonable searches and seizures by participating in an effort to conceal the violation by omitting facts within their report pertaining to the aforementioned incident.

(Doc. No. 31 at PageID 309.)

To successfully plead a Section 1983 conspiracy, Runser must allege sufficient facts to state a claim that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). This pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). A plaintiff's "failure to plead a plan or agreement to violate his constitutional rights is fatal to his conspiracy claim." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011). In addition, a Section 1983 conspiracy claim "must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

It is not entirely clear that Runser intended this singular reference to state a conspiracy

claim. Indeed, Runser did not address a potential conspiracy claim in his opposition. However, to the extent a conspiracy claim is intended, it is clear that Runser has not sufficiently plead any of the three elements necessary to state a conspiracy claim. Therefore, any conspiracy claim included in Count III is dismissed.[3]

### D. Plaintiff's Remaining Claim

Defendants Malson and Sopczak argue that Count IV (civil assault), Count V (false arrest/false imprisonment), and Count VII (intentional infliction of emotional distress) do not mention either Defendant. (Doc. No. 32 at PageID 325; Doc. No. 36 at PageID 350-51.) Similarly, both Defendants argue that there is no individual liability under Count VI (negligent hiring, training, supervision and retention) or Count VIII (municipal liability and violation of civil rights). (Doc. No. 32 and PageID 325-26; Doc. No. 351-52.) Runser does not address these counts in either of his oppositions.

It is clear that Count IV, Count V, Count VII, and VIII are not directed toward Malson or Sopczak. The allegations in the first three of these counts do not reference Malson or Sopczak specifically. Moreover, the factual allegations reference only the specifics of Runser's detainment and physical encounters with Wiesman and Victor. Count VIII is specifically directed at the Dayton Police Department and the policies, customs, and practices it permitted that allegedly led to Runser's injuries. (Doc. No. 31 at PageID 313-15.) Therefore, Count IV, Count V, Count VII, and Count VIII are dismissed to the extent a claim is directed against Malson and Sopczak.

Defendants Malson and Sopczak both argue that individual liability does not attach for the claim of negligent hiring, training, supervision, or retention alleged by Runser in Count VI.

---

[3] This ruling should not be construed to mean that Count III is dismissed in its entirety. Instead, the ruling should be understood to mean that any conspiracy claim intended in Count III is dismissed, while the remainder of the claim stands.

11

However, this count only mentions Malson and Sopczak in as far as they conducted an incompetent investigation and the City of Dayton failed to adequately train them or hold them to account for their incompetence. (Doc. No. 31 at PageID 311-12.) The allegations in Count VI are not directed at Malson and Sopczak, but instead at the City of Dayton. Therefore, Count VI is dismissed to the extent a claim is directed against Malson and Sopczak.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Christopher Malson's Motion to Dismiss Amended Complaint (Doc. No. 32) and Motion to Dismiss by Defendant Jonathan Sopczak (Doc. No. 36).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, February 24, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE